IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHARON HUDDLESTON,

      Plaintiff,

      v.                            CASE NO.  24-3086-JWL

JEFF ZMUDA, et al.,

      Defendants.


## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Sharon Huddleston is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein. Plaintiff is also given the opportunity to file an amended complaint to cure the deficiencies.

### I.  Nature of the Matter before the Court

Plaintiff filed this pro se civil rights action under 42 U.S.C. § 1983.  Plaintiff is incarcerated at the Topeka Correctional Facility in Topeka, Kansas (TCF).  The Court provisionally grants Plaintiff leave to proceed in forma pauperis.

Plaintiff alleges deliberate indifference in Count I of her Complaint, due to "exposure to toxins and improper ventilation." (Doc. 1, at 4.) She alleges deliberate indifference to her health and safety based on "exposure to mold, fungus, toxins, etc., without adequate ventilation."  *Id*. at 7.  Plaintiff alleges that "Defendants Zmuda and Hook are aware of the presence of mold and toxins, and are aware of actual current and potential detrimental effects of the mold, toxins, sewer gas and of inadequate ventilation."  *Id*.

1

Plaintiff states that "[i]nmates are exposed to mold, toxins, and fungus growth inside cells, showers, dayrooms, and the cafeteria without having adequate ventilation.   Sewage overflows in cells from the inadequate plumbing and the presence of 'the pit.'"   *Id*.   Plaintiff claims that TCF and the Kansas Department of Corrections ("KDOC") ignore these standards because the TCF inmates are females.   *Id*.   Plaintiff claims that "we the class will demonstrate an inference that the relevant defendants are aware of the presence of mold. . . through prior safety inspection reports, through a recent report of mold when buildings were shut down, through pictures of the cafeteria, the showers, certain walls and ceilings, and asbestos surveys."   *Id*. at 8.   Plaintiff alleges that "the class" requested the reports but they were denied, and "pictures or a lay person can clearly recognize these issues (which is how class members are confident that they exist.)"   *Id*.   Plaintiff alleges that "TCF's policy in enforced by Zmuda and Hook to paint over areas of mold."   *Id*. at 9.

Plaintiff alleges that there is inadequate ventilation because there is no way to filter air, windows do not open, and vents are never cleaned inside the rooms and outside the rooms.   *Id*. at 8.   Plaintiff alleges that "[s]mells come from individual vents because we are breathing other cells feces as it overflows into our cells . . . [t]his is the sewer gas from the pit that backups [sic] at least two or three times a week through our toilets overflowing or our sinks overflowing."   *Id*. at 9.   Plaintiff alleges that they are then forced to breath these toxins and there is no way to filter the mold or sewer gas.   *Id*.

As Count II, Plaintiff alleges deliberate indifference based on "food and safety."   *Id*. at 4.   Plaintiff alleges that hot food is served cold, "some food was undercooked and portions are below required calorie amount as listed in KDOC policy and Federal Standards for FDA."   *Id*. at 9–10.   She claims that "Defendants do not supervise meal preparation and service to ensure

quality, sanitation, texture, consistency, appearance and to follow KDOC's own IMPPs." *Id*. at 10. Plaintiff claims that "Aramark serves food open air delivery in unsanitary conditions and food temperatures fall below State Food Service Codes." *Id*. Plaintiff states that "[o]ther unsanitary food conditions include raw food, mice in food carts, bugs and rodents in kitchen, etc." *Id*. She claims that "Plaintiffs have relayed these issues to defendants." *Id*.

Plaintiff names as defendants: Jeff Zmuda, KDOC Secretary of Corrections; Donna Hook, TCF Warden; and Aramark Food Service. Plaintiff seeks "declaratory relief – 5,000." *Id*. at 6.

## II. Statutory Screening

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not

raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in

4

this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

Plaintiff asserts the same claims that were alleged in *Stauch v. Zmuda*, Case No. 24-3027-JWL, where she filed a motion seeking joinder. The Court ordered a *Martinez* Report regarding these claims in *Stauch*. After reviewing the *Martinez* Report (the "Report"), the Court entered a Memorandum and Order in *Stauch* finding that the claims were subject to dismissal. *See Stauch v. Zmuda*, Case No. 24-3027-JWL, Memorandum and Order at Doc. 27 (D. Kan. July 29, 2024). The Court found that:

> As Count II, Plaintiff alleges cruel and unusual punishment and deliberate indifference to her health and safety. Plaintiff bases this claim on the following conditions: exposure to toxins from sewage leaks that cause waste to return to inmates' cells about two times a week; inoperable sinks that lack hot water for sanitation; obvious signs of mold leading to medical issues; exposure to contaminated water on January 14, 2024, when Defendants failed to advise inmates about a warning from the city of Topeka for 24 hours; inadequate ventilation adding to the exposure to toxins; leaking windows that allow rain, wind, and vermin to enter through the windows; getting cleaning supplies is often an issue; and food is not prepared under clean conditions, is generally cold, and does not follow nutritional guidelines. Plaintiff alleges that the conditions have caused breathing issues, extreme headaches, dizziness, nausea, daily nose bleeds, and diminished lung capacity.
>
> A prison official violates the Eighth Amendment when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id*. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id*. It is not enough to establish that the official should have known of the risk of harm. *Id*.

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id*. As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id*. (citations omitted).

The Report shows that no sewage backups have been observed in any of TCF's cells, including the 10 cells in which Plaintiff has resided; when there is a backup reported for the showers, maintenance personnel try to immediately respond and block off traffic to the area; and TCF is in the process of upgrading its solid waste sewer system to address this issue and it is expected to be completed in 2025. Plaintiff does not specify an instance where raw sewage was actually present in *her* cell, and mentions exposure to fumes. She mentions sewage leaks "that causes [sic] the waste to return to *our cells* including other inmates['] feces, waste, etc., causing me to breathe in these fumes including gray water." (Doc. 12, at 9) (emphasis added). She also mentions sewage leaks "through rooms" and "the pit" causing "backups and toxins overflowed into our rooms at an increasing rate" and "the issues with toxins and exposure to other feces has continued." *Id*. at 9–10. She then states that "[i]t is estimated that it backs up and overflows in our rooms twice a week." *Id*. at 10. She adds that "ICH does not have adequate ventilation which adds to the exposure" and that she has been "expos[ed] to toxic substances,

sewer gas." *Id.* at 10, 12. In any event, Plaintiff does not allege that staff failed to timely remedy any plumbing backups.

As for mold, Plaintiff makes an unsupported allegation that "obvious signs of mold" have led to health issues, without indicating where or when she observed mold at TCF. *Id.* at 10. A "bare allegation of [the presence of] mold . . . does not create a reasonable inference regarding the sort of threat to [a plaintiff's] mental or physical well being which is necessary for violation of the Eighth Amendment." *Cox v. Grady Cty. Detention Center*, 2008 WL 1925052, at *3–4 (W.D. Okla. April 29, 2008) (citing *Dittmeyer v. Whetsel*, 91 F. App'x 111 (10th Cir. Feb. 11, 2004)). The Report shows that the only document in which Plaintiff mentions mold is in a grievance that claims inadequate medical care from a Centurion nurse; Plaintiff did not file a grievance or maintenance request regarding any suspected mold during her time at TCF; and TCF's Maintenance Department investigates all claims of mold and has not identified any species of mold in Plaintiff's current or previous cells.

Plaintiff claims that "sinks are inoperable without hot water for sanitation." (Doc. 12, at 9.) The Report shows that TCF heats its water with older water heaters which sometimes take up to a minute to produce heated water in cold weather. Hot water is available in all TCF sinks and showers, though it may take a few seconds to become available. The Report provides that at no point have any of Plaintiff's current or prior cells been without access to heated water; and since August 2023, hot water temperatures have been confirmed to range from 100 degrees Fahrenheit to 120 degrees Fahrenheit for each ICH inspection.

As for the day of the water advisory, Plaintiff claims that they "were only given two bottles of water in the morning and two at night." (Doc. 12, at 10.) The Report states that the KDHE's water advisory on January 14, 2024, was specifically directed at the Metro Topeka Airport Authority and Shawnee County Rural Water District 1C and out of an abundance of caution, steps were taken to prevent any risk to resident health. To ensure each resident was aware of the advisory, including residents that did not have tablet access, unit teams followed up the electronic notice with a verbal notice to their respective residents, maintenance staff also posted warnings on all facility water fountains, the facility shut off its water supply, and residents were issued bottles of water. Plaintiff has acknowledged that she received the bottled water and fails to allege that any delay in receiving notice of the water advisory was the result of deliberate indifference.

Regarding cleaning supplies, Plaintiff states that access to cleaning supplies "is often an issue because SSGTs on duty consistently yell about getting them and threaten to take them away

daily." *Id*.  Plaintiff does not suggest that she has no access to cleaning supplies.  Plaintiff's Unit Team Manager, Linda Hull-Viera, does not recall a single instance in which Plaintiff was denied the ability to retrieve cleaning products or to be provided cleaning products by security personnel.

Plaintiff also makes the bald conclusion that ICH does not have adequate ventilation.  *Id*.  The Report states that TCF has contracted with P1 Groupe, Inc., which maintains air quality and ventilation systems for the facility, and the Maintenance Department has not found inadequate ventilation in Plaintiff's current or previous cells or in the I cellhouse generally.

Plaintiff claims that "[w]indows leak water and winds are of extreme temps in winter at ICH . . . [v]ermin also enters into some windows." *Id*. at 11.  Plaintiff does not give any specifics as to when and where she observed leaking windows or vermin entering through unspecified windows.   The Report states that no evidence of window leaks, mold, or vermin have been found by TCF's Maintenance Department in any of the cells that Plaintiff has resided; Plaintiff's claim that her cell experiences extreme temperature changes is unsubstantiated and has not been reported to TCF's Maintenance Department; and since Plaintiff has lived at TCF, not one Health and Sanitation Inspection Report has found a window opening that would allow a bug/rodent infestation in ICH.

Plaintiff also claims that "food is not prepared under clean conditions and food is generally cold and does not follow nutritional guidelines." *Id*.  The Report provides that TCF contracts with Aramark, Inc. for resident food services; Aramark has 2 full-time nutritionists that ensure meals are nutritionally compliant with state and federal standards; and while TCF's kitchen is being renovated, meals are being prepared in a mobile facility on TCF grounds and placed in portable food warmers and distributed as quickly as possible.  The warmers are sufficient to keep meals warm until they reach the resident and meals are prepared in a sanitary manner and with the same care as if they were being prepared in the facility kitchen.  The Report acknowledges that food is sometimes cold and a temporary result of TCF's kitchen renovations.  (Doc. 24, at 13.)

Again, Plaintiff fails to refer to any specific instances or to give any details as to why she believes the food is not prepared under clean conditions or why it does not meet nutritional guidelines.  She also fails to give examples of when or how often food is served cold.  Similar allegations regarding cold food have been found to be insufficient to show a constitutional violation. *See Redick v. Coy*, 2022 WL 1026892, at *3 (D. Kan. 2022) (plaintiff failed to show that hair in food resulted from deliberate indifference and stating that "[c]ourts have found similar

allegations insufficient to establish the violation of a constitutional right") (citing *see, e.g., Green v. Atkinson*, 623 F.3d 278, 281 (5th Cir. 2010) ("A single incident of food poisoning or finding a foreign object in food does not constitute a violation of the constitutional rights of the prisoner affected."); *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) (ruling that presence of foreign objects in food was insufficient to prove deliberate indifference); *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that [prison] food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."); *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (same); *Ockert v. Beyer*, No. 10–3058–SAC, 2010 WL 5067062 at *2 (D. Kan. Dec. 7, 2010) (finding that a single incident where hair was found in food failed to give rise to a constitutional violation)).

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted). Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

Plaintiff has failed to show deprivations sufficiently grave enough to form the basis of an Eighth Amendment violation. She has also failed to show that any defendant was deliberately indifferent to her health or safety with regard to the conditions set forth above. Plaintiff is given an opportunity to respond to the Report and to show good cause why her claims regarding these conditions at TCF should not be dismissed for failure to state a claim.

*Id.* at 14–20.

The Court finds that Plaintiff's claims, which she has argued are the same as those set forth in *Stauch*, are subject to dismissal for the same reasons set forth in the Memorandum and Order in *Stauch* quoted above. Plaintiff should show good cause why her claims should not be

dismissed for failure to state a claim.  Plaintiff is also given an opportunity to file an amended complaint to cure any of these deficiencies.  In filing an amended complaint, Plaintiff should keep the following in mind.

Plaintiff makes general allegations about experiences of other inmates and claims on behalf of the inmate population in general.  It is well-settled that a § 1983 claim must be based on the violation of a plaintiff's personal rights and not the rights of someone else.  *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (citations omitted).  To the extent Plaintiff raises claims on behalf of others, a review of the allegations contained in her Complaint indicates she lacks standing to do so.  To have standing, a prisoner must state "specific facts connecting the allegedly unconstitutional conditions with [her] own experiences [in the prison], or indicat[e] how the conditions caused [her] injury." *Swoboda v. Dubach,* 992 F.2d 286, 289 (10th Cir. 1993).  "[G]eneral observations" about prison conditions are not actionable under 42 U.S.C. § 1983.  *Id.* at 289–90.

Such general grievances are best addressed to the legislative, not the judicial, branch.  *Bd. of Cty. Comm'rs of Sweetwater Cty. v. Geringer,* 297 F.3d 1108, 1112 (10th Cir. 2002) (citing *Allen v. Wright,* 468 U.S. 737, 751 (1984)).  Such claims should be dismissed for lack of prudential standing.  *See, e.g., Whitington v. Ortiz,* 307 F. App'x 179, 191 (10th Cir. 2009) *(pro se* prisoner plaintiff "lack[ed] standing to attempt to re-regulate the entire CDOC system, or to sue directly or indirectly on behalf of anyone but himself"); *Martinez v. Mesa Cty. Sheriff's Dep't,* 69 F.3d 548 (Table), 1995 WL 640293 at *1 (10th Cir. 1995) (unpublished) (court is not empowered to decide "generalized grievances concerning prison management").

Plaintiff should keep these principles in mind when drafting her amended complaint.  Her claims will be considered only to the extent they allege a violation of *her*

constitutional rights.  Therefore, she must include allegations regarding the conditions that she personally experienced.  She should include locations and dates and indicate who she personally notified about the conditions.  She does not state with whom she filed a grievance regarding any of the conditions set forth in her Complaint.

An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court") (citations omitted).  "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007) (stating that "the benefits of exhaustion include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record") (citations omitted).

This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it."  *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Little*, 607 F.3d at 1249. A prison or prison system's

11

regulations define the steps a prisoner must take to properly exhaust administrative remedies and a prisoner "may only exhaust by properly following all of the steps laid out" therein. *Little*, 607 F.3d at 1249 (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

## IV.  Motion for Leave to Proceed in Forma Pauperis (Doc. 2)

Plaintiff has filed a motion seeking leave to proceed in forma pauperis (Doc. 2).  On May 31, 2024, the Court entered a Notice of Deficiency (Doc. 3) advising Plaintiff that her ifp motion did not include the financial information required under 28 U.S.C. § 1915(a)(2) (A prisoner seeking to bring a civil action without prepayment of fees shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint.)  (Doc. 3, at 1.)  The order granted Plaintiff until July 1, 2024, in which to correct the deficiencies "or this action may be dismissed without prejudice and without further notice." *Id*. at 2.  Plaintiff has failed to comply by the Court's deadline.

The Court will provisionally grant Plaintiff leave to proceed in forma pauperis. However, she remains obligated to provide the 6-month account statement to enable the Court to assess an initial partial filing fee.  The Court will grant Plaintiff an extension of time to August 12, 2024, in which to provide her 6-month account statement as required by 28 U.S.C.

§ 1915(a)(2).  Failure to comply by this deadline will result in dismissal of this action without prejudice and without further notice.

## V. Response and/or Amended Complaint Required

Plaintiff is required to show good cause why Plaintiff's Complaint should not be dismissed for the reasons stated herein.  Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.  To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint.  *See* Fed. R. Civ. P. 15.  An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it.  Therefore, any claims or allegations not included in the amended complaint are no longer before the court.  It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.

Plaintiff must write the number of this case (24-3086-JWL) at the top of the first page of the amended complaint and must name every defendant in the caption of the amended complaint.  *See* Fed. R. Civ. P. 10(a).  Plaintiff should also refer to each defendant again in the body of the amended complaint, where Plaintiff must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances.  Plaintiff must allege sufficient additional facts to show a federal constitutional violation. Plaintiff is given time to file a complete and proper amended complaint in which Plaintiff (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.  If Plaintiff does not file an amended complaint within

the prescribed time that cures all the deficiencies discussed herein, this matter may be dismissed without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that the Court provisionally grants Plaintiff leave to proceed in forma pauperis.  Plaintiff remains obligated to provide the 6-month account statement to enable the Court to assess an initial partial filing fee.  The Court will grant Plaintiff an extension of time to **August 12, 2024**, in which to provide her 6-month account statement as required by 28 U.S.C. § 1915(a)(2).  Failure to comply by this deadline will result in dismissal of this action without prejudice and without further notice.

**IT IS FURTHER ORDERED** that Plaintiff is granted until **August 30, 2024,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **August 30, 2024**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated July 30, 2024, in Kansas City, Kansas.**

**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**